# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Dorothy Diaz,                                   )
                                                )
      Plaintiff,                            )
                                                )
vs.                                             )            Case No. 1:06-cv-018
                                                )
Westin Hotel,                                   )
                                                )
      Defendant.                            )

## ORDER

This matter is before the Court on Defendants' motion for summary judgment. Doc. no. 18.  For the reasons that follow, Defendants' motion for summary judgment is **GRANTED.**

## I.  Introduction

Plaintiff, a female citizen of the State of Ohio, brings this action against Defendant Westin Hotel, an Ohio corporation doing business in the State of Ohio.[1]  Plaintiff brings claims for gender discrimination under Title VII of the Civil Rights Act of 1964, 42

---

[1]Defendant states that its proper name is Starwood Hotels and Resorts Worldwide, Inc., dba Westin Hotel.

U.S.C. § 2000e-2, et seq., and Ohio Revised Code Ch. 4112 (Counts I and II); violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. (Count III); pregnancy discrimination in violation of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) (Count IV); and breach of Ohio public policy (Count V). Plaintiff claims that Defendant discriminated against her by treating her differently than male and non-pregnant employees and terminating her employment. Plaintiff also claims that Defendant terminated her in retaliation for exercising her rights under the FMLA. Plaintiff claims that Defendant's actions constitute a breach of public policy. The Court has subject matter jurisdiction over Plaintiff's claims brought under federal law pursuant to 28 U.S.C. § 1331. Plaintiff invokes the Court's supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

## II. Background

Plaintiff began her employment with Defendant in 1993 as a part-time employee. She eventually became a full-time Banquet Server. Plaintiff was a member of the Hotel Employees and Restaurant Employees Union, Local 12 ("Union"), and was subject to the collective bargaining agreement between Defendant and the Union. As a Banquet Server, Plaintiff was responsible for serving guests at breakfast, lunch and dinner events and receptions. Her duties included setting up buffets, serving food to guests at tables, passing food by tray to standing guests, and serving beverages. From 1999 until her termination, Plaintiff reported to Banquet Manager Kim Roberts. Roberts in turn reported

2

to John Wedig, Food and Beverage Director.

The collective bargaining agreement sets forth Defendant's right to make and enforce work rules.  Defendant has established standards of conduct, performance and attendance, which are enforced through a progressive discipline system.  Pursuant to this system, when an employee commits a rule infraction or is deficient in his or her work performance, the employee's supervisor or manager documents the details surrounding the incident on a disciplinary form.  The form is then submitted to the Human Resources Department, which determines whether discipline is appropriate and, if so, indicates the level of discipline warranted by the infraction.  An employee generally receives coaching prior to being issued formal discipline.  Formal discipline includes two verbal warnings and three written warnings.  The second written warning is considered the "last and final warning" before discharge and is marked accordingly.  Upon receipt of a third written warning, an employee is suspended pending investigation and possible discharge.  Discipline is cumulative for all performance deficiencies and infractions.

In 2000, Roberts rated Plaintiff's performance as "unsatisfactory."  Over the following three years, Plaintiff received an overall rating of "satisfactory."

In the autumn of 2003, Plaintiff informed Defendant that she was pregnant and due at the end of the year.  In late October, Defendant honored Plaintiff's physician's recommendation that she not work more than two consecutive shifts in a day.  In late November, after Plaintiff's physician determined she could not continue working,

Plaintiff obtained family and medical leave from December 1, 2003, until eight weeks post-partum.  Plaintiff exhausted her twelve weeks of FMLA leave.  On February 26, 2004, she requested five additional weeks of leave to have cataract surgery on both eyes. Defendant approved leave through the requested date of April 5, 2004.

Plaintiff returned to her full-time server position without restrictions on April 5, 2004.  She received her annual review for the 2003-04 review year.  Roberts rated Plaintiff as meeting expectations in all categories.

On May 6, 2004, Defendant received a complaint from a customer about a "coffee break" group running out of coffee, which occurred while Plaintiff and a co-worker, Miguel Alcalde, were providing coffee service.[2]  Defendant wrote off the customer's charges in response to the complaint.  Plaintiff received a verbal warning while Alcalde received a documented coaching.  Plaintiff contested the discipline and the Union filed a grievance on her behalf.  Plaintiff admitted that she had been left in charge of training Alcalde, who she described as a "new employee who hadn't worked banquets before;" she had assigned him to handle a function on his own while she took a larger function; and she had used her judgment and instructed him to use two small coffee urns and one hot water urn for the coffee service when he had wanted to use a three-gallon coffee urn. Plaintiff's depo., pp. 70-72, 148, 151-52; depo. exh. 26.  Defendant denied the grievance, and the Union did not pursue arbitration.  Hakes Decl., ¶ 9.

_____

[2] The disciplinary form lists the date of the incident on the first page as April 6, 2004, which is an apparent mistake.

4

One week later, Plaintiff received a second verbal warning for taking an unauthorized break during a guest function.  Forty-five minutes into the event, Plaintiff was discovered three floors away from the event on the receiving dock with her friend and co-worker who was also assigned to the event, Francesco Ferrari.  Defendant alleges that she was taking a break when she should have been passing hors d'oeuvres at the function.  Hakes Decl., ¶ 10; Plaintiff's depo., exh. 29.  Plaintiff admittedly had not asked Roberts' permission to take a break.  Plaintiff's depo, p. 164.

Four months later, in September 2004, Plaintiff received her first written warning, which was for taking food from the hotel without permission in violation of company policy.  Plaintiff received the warning from Wedig, who prepared a discipline form and submitted it to Human Resources.  Plaintiff's depo., pp. 85, 89; depo. exh. 32.

On October 7, 2004, Plaintiff received her "last and final" warning for not completing a work assignment before clocking out.  Plaintiff received the warning from Assistant Banquet Manager Marcel Riddle for leaving a banquet cart full of dirty banquet service items unloaded for employees on the following shift to clean up and put away.  Plaintiff's depo., exh. 33; Hakes Decl., ¶ 11.

Two days later, on October 9, 2004, Plaintiff was scheduled to work a double shift beginning at 5:00 a.m.  Plaintiff called Roberts at 7:30 a.m. as the breakfast shift was concluding and told her that her alarm clock had not gone off.  Roberts instructed Plaintiff to report for the lunch shift.  Roberts subsequently documented Plaintiff's missed shift

and submitted it to the Human Resources Department for review.  Hakes concluded that suspension pending investigation and discharge was appropriate.  On October 13, 2004, Roberts met with Plaintiff and informed her that she was suspended pending investigation and possible discharge.  After reviewing Plaintiff's progressive discipline, Hakes concluded that discharge was warranted.  She informed Plaintiff on October 15, 2004, that her employment was terminated.  Plaintiff contested her discharge, the Union filed a grievance on her behalf, the Westin denied the grievance at each stage of the grievance process, and the Union did not pursue arbitration.  Hakes Decl., ¶¶ 13, 14; Plaintiff's depo., exh. 7.

At some point during her employment, Plaintiff had complained to Hakes that the rules were being applied inconsistently and about Roberts' supervision.  Hakes depo., pp. 71-72; Roberts depo., pp. 45-47.  According to Plaintiff and Ferrari, Roberts had told them that they were troublemakers because they spoke up about the unfair treatment.  Plaintiff's depo., pp. 57-58; Ferrari Aff., ¶ 10, doc. 22, attachment.  Roberts found fault with Plaintiff because she "wanted to know what everybody else was doing" and she considered her a "busybody."  Roberts depo., pp. 74-77.  On June 14, 2004, Plaintiff wrote a letter to General Manager Bodington and told him the rules were not being enforced equally in the Banquet Department, there was favoritism, and there were unclear rules.  Plaintiff's depo., pp. 167-68; see Hakes depo, p. 74.  Bodington never received the letter.  Bodington depo., pp. 18-19.

6

Plaintiff was the only female employee who became pregnant while reporting to Roberts.  According to Ferrari, Roberts spoke negatively about Plaintiff to other employees after Plaintiff returned from maternity leave.  Ferrari Aff., ¶ 12.  Roberts did not notice a difference in Plaintiff after her return from maternity leave and did not notice that having a newborn affected Plaintiff's work.  Roberts depo., pp. 70, 78.

### III.  Summary judgment standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) (emphasis in original). The court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

IV.  Opinion

A.  Gender discrimination claim

1.  Applicable law

Under the law of the Sixth Circuit, the same evidentiary framework applies to discrimination claims brought under Title VII and Ohio law.  Mitchell v. Toledo Hospital, 964 F.2d 557, 582 (6th Cir. 1992)).  A plaintiff claiming discrimination may establish a prima facie case by introducing either direct or circumstantial evidence.  Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 547-48 (6th Cir. 2004).  Direct evidence is evidence that "proves the existence of a fact without requiring any inferences."  Id. at 548  (citations omitted).

Plaintiff may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) she is a member of the protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and  4) her position was filled by someone outside of the protected class.  Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir. 1994) (citing  McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973); Gagne v. Northwestern Nat. Ins. Co., 881 F.2d 309, 313 (6th Cir. 1989)).

Plaintiff may also establish the fourth prong of a prima facie case by showing that she was treated less favorably than a similarly-situated employee outside of her protected class.  Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002).  In such a case, plaintiff

must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself.  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998).  Although the Sixth Circuit has held that "to be deemed 'similarly-situated,' the individuals with whom [the plaintiff] seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," Mitchell, 964 F.2d at 583, the Sixth Circuit has subsequently noted that "Mitchell itself only relied on those factors relevant to the factual context in which the Mitchell case arose-an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment."  McMillan v. Castro, 405 F.3d 405, 413 (6th Cir. 2005) (citing Ercegovich, 154 F.3d at 352).  The McMillan court clarified that the specific factors addressed in Mitchell "generally are all relevant in cases alleging differential disciplinary action," but courts should not assume that the specific factors discussed in Mitchell are relevant in cases arising under different circumstances.  Id. Rather, in such cases, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."  Id. at 413-14; see also Seay v. Tenn. Valley Auth., 339 F.3d 454, 479-80 (6th Cir. 2003) (noting that Mitchell's "same supervisor" language has never been read as imposing an inflexible requirement and this particular factor was not relevant to the Seay plaintiff's claim where the record indicated that the decision to suspend the

10

plaintiff "was not made in a vacuum," several discussions and a meeting took place involving all of the people involved in the decision-making process, including the plaintiff's immediate supervisor and the department manager, and all of those individuals were well-aware of the discipline meted out to past violators).

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the employer carries its burden, the plaintiff must prove by a preponderance of the legal evidence that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. Id. at 804.

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the adverse employment decision; or 3) the reasons were insufficient to warrant the decision made. Manzer, 29 F.3d at 1084; McDonnell Douglas, 411 U.S. at 802. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, that is, the reason is factually false. Id. It consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, so that the proffered reason is pretextual. Manzer, 29 F.3d at 1084. An inference of pretext is not warranted where the employer can demonstrate an honest belief in its proffered reason,

11

i.e., where the employer can establish that it "reasonabl[y] reli[ed] on particularized facts that were before it at the time the decision was made." Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998)). The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. Manzer, 29 F.3d at 1084.

Although the court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003). "[T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Id. (citing Smith, 155 F.3d at 807). The plaintiff may establish pretext by showing that the "asserted business judgment was so ridden with error that defendant could not honestly have relied upon it." Id. (quoting In re Lewis, 845 F.2d 624, 633 (6th Cir. 1988)).

2. Analysis

Plaintiff alleges that she and male employees who were similarly-situated in all relevant respects engaged in acts of "comparable seriousness," but the male employees were treated better than Plaintiff. Plaintiff alleges that she and the male employees were similarly-situated in all relevant respects because (1) they worked in the Banquet

12

Department, (2) they were subject to disciplinary actions by the same managers, and (3)

they were subject to the same disciplinary policies and system of progressive discipline.

Plaintiff specifically alleges that she was treated less favorably than similarly-situated

male employees in the following instances:

•    While Alcalde was responsible for failing to make sure there was coffee for an
     event and both he and Plaintiff were "essentially at the same step in terms of
     progressive discipline," Plaintiff received discipline progressive toward
     termination while Alcalde received only coaching and Alcalde was not disciplined
     "for failing to help Plaintiff or for being late."

•    Plaintiff, a non-smoker, was disciplined for taking a bathroom break for which she
     did not need advance permission because she cut through the smoking dock
     whereas Larry Gray and Melvin Carpenter, both smokers, regularly took smoke
     breaks on the dock but received no discipline.

•    Plaintiff was disciplined for taking home leftover food while male "and other
     employees" did so without consequence.

•    Plaintiff was disciplined for failing to break down a cart she did not use while a
     male employee (and a female employee) "failed to attend to [their] cart" and were
     not disciplined.

•    When Plaintiff overslept, she was given a written warning subjecting her to
     suspension and, ultimately, termination.  Male employees who were late were
     either not disciplined or were not subjected to similar discipline; when they failed
     to show up for work, managers would call them at home; and discipline was not
     cumulative and did not result in termination.

After carefully reviewing the evidence Plaintiff has offered in support of her

allegations of dissimilar treatment, the Court finds that Plaintiff has not come forward

with sufficient evidence to establish a prima facie case of gender discrimination.  First,

Plaintiff complains that the discipline for the incident involving the coffee break was unfair because it was Alcalde's failure that caused the customer complaint,  Alcalde was supposed to "share responsibility for all breaks," Alcalde was not disciplined for failing to help Plaintiff or for being late to work that morning, and instead of starting with a clean disciplinary slate like Alcalde, which should have occurred since Plaintiff's last discipline had been more than 12 months earlier on April 28, 2003, Plaintiff was given a second verbal warning.   Plaintiff has not shown, however, that she was similarly-situated to Alcalde.  To the contrary, Plaintiff was an experienced banquet server, while Plaintiff herself describes Alcalde as a newer and inexperienced employee who had been placed under her direction that day and who she had been "essentially left to train" while attending to her own job.  Plaintiff states that she gave Alcalde a smaller room to work (despite Roberts having told the two employees not to split the events as they had (Roberts depo., p. 60)) and exercised her judgment in directing him to use smaller coffee urns.  Doc. 22, pp. 4-5, exh. A; Plaintiff's depo., pp. 70-75.  Given these circumstances, Defendant had a rational basis for holding Plaintiff to a higher degree of accountability and meting out more severe discipline to her than it did to Alcalde.  Its decision is not subject to second-guessing by the Court or the jury.

Similarly, Plaintiff has not shown that she was treated differently than similarly-situated employees when she was disciplined for taking a break on the receiving dock. Plaintiff contends in her opposing memorandum that the discipline for the unauthorized

break was unfair because she had to use the restroom on the service level downstairs since servers were not allowed to use the restrooms near the event, she did not need Roberts' permission to take a bathroom break, she cut through the dock area afterwards where the smokers take breaks just as Roberts was walking through, she does not smoke but was written up for taking a break on the smoking dock, and Larry Gray and Melvin Carpenter, both males and both smokers, often went down for smoke breaks without permission but were never written up.  See Plaintiff's depo., pp. 78, 83, 159-164; Hakes depo., p. 127; Carnevale Aff., ¶ 6.  Plaintiff's suggestion that she was simply cutting through the receiving dock on her way back from the bathroom when Roberts encountered her is inconsistent, however, with the statements she made in the affidavit she prepared on March 8, 2005.  See Plaintiff's depo., exh. 7.  In her affidavit, Plaintiff concedes that she was taking a break when Roberts came across her, stating that she had stopped in the smoking area to see Ferrari, she had not even been there three minutes when Roberts saw her, and when Roberts asked what they were doing there, Plaintiff replied, "we were taking a break."  Id.  Thus, Roberts was clearly justified in concluding that Plaintiff was taking a break when Roberts encountered her.  Although Plaintiff alleges that other individuals were not disciplined when they took unauthorized breaks, she makes only a conclusory allegation to this effect and provides no specific details to support a finding that the individuals took breaks under similar circumstances, i.e., early after an event had begun when they were expected to be working the event, or to show that Roberts was aware that these individuals were taking unauthorized breaks.  Absent

15

any specific evidence to support her conclusory allegation, there is no basis for finding that Plaintiff was treated less favorably than similarly-situated males for taking an unauthorized break.

Plaintiff claims that she was treated less favorably than a male employee with regard to the dirty cart incident because just days later, on October 9, she notified Riddle that Alcalde had left a cart out, but Alcalde was not disciplined.[3] Plaintiff's depo., p. 206; Doc. 22, exh. F; Carnevale Aff., ¶ 7. Plaintiff, however, provides no specifics regarding the October 9 incident, such as whether the cart was full of dirty items and whether someone else was required to break down the cart. Her allegations are much too vague to permit a finding that the infractions were similar and warranted comparable discipline.

Plaintiff likewise cannot establish that she was treated less favorably than a similarly-situated male for taking food home without authorization. Plaintiff contends that employees took leftover food home all of the time and had done so with Defendant's knowledge. She states that the day after she committed this infraction, a male employee, Ruben Pilot, took food home without permission, Plaintiff reported the infraction to Supervisor Marciel Riddle, Riddle told Plaintiff he had talked to Pilot and told him not to do it again, but Pilot did not receive any discipline. Plaintiff's depo., pp. 90-92, 206; Hakes depo., p. 67. Plaintiff has not shown, however, that she was similarly-situated to

---

[3]Plaintiff omits to mention in her opposing memorandum that she reported to Riddle that both Alcalde and a female employee had left the cart out. Plaintiff instead seeks to compare her treatment only to that afforded Alcalde.

16

Pilot because Plaintiff was disciplined by Wedig for this incident and she is not aware that Wedig saw others take food home, whereas Plaintiff reported the incident involving Pilot to a different supervisor, Riddle.  Accordingly, the discipline Plaintiff received for this infraction cannot satisfy the fourth element of her prima facie case.

Finally, Plaintiff seeks to compare herself to male employees who she claims were disciplined less harshly for violating Defendant's Time and Attendance Policy than Plaintiff was.  Plaintiff claims that employee Melvin Carpenter violated the call-off policy and did not report to work three times in one week but received coaching and verbal warnings instead of written warnings as required by the policy (see doc. 22, exh. H, documenting that Carpenter called off less than two hours before the start of his shift the first day and called off two additional days in the same week); Calvin Booker failed to show up for work on two occasions and both times a supervisor called him at home and he received no discipline for being approximately two and four hours late, respectively (Carnevale Aff., ¶ 8; Plaintiff's depo., pp. 138, 211-12); Larry Gray purportedly received no discipline, coaching or verbal warnings for the multiple times he was late, and Roberts would call him at home if he did not report to work (Plaintiff's depo., pp. 132, 138); and when Alcalde came in late, he received coaching instead of a second written warning (Doc. 22, exh. J, documenting Alcalde's arrival to work 12 minutes late).  Plaintiff claims that Roberts admits in her declaration that she approved different arrival times for other employees by stating, "I did not consult Diaz when I approved a subordinate's arrival at a

17

time later than that marked on the schedule." See Roberts Decl., ¶ 4, Doc. 18, attachment.

Plaintiff has not come forward with sufficient, competent evidence to create a genuine issue of material fact as to whether she was treated less favorably than similarly-situated males who committed comparable infractions of the Time and Attendance Policy. First, Plaintiff has not explained how the coaching and two verbal warnings Carpenter received violated the policy. In any event, there is no indication that Carpenter failed to report his absence prior to the start of his shift on any day, so that his infractions are not of comparable seriousness to the infraction committed by Plaintiff, who did not report her absence until the conclusion of her breakfast shift. Second, Alcalde's being twelve minutes late for his shift as documented at doc. 22, exh. J, is not as egregious as Plaintiff's missing an entire shift. In addition, the only evidence Plaintiff offers of other infractions by Alcalde and of infractions by Booker and Gray are her handwritten notes and handwritten notes she has identified only as "Wilson notes" (doc. 22, exh. I)[4], which list dates these individuals were allegedly late and some brief descriptions of the circumstances. The notes, however, are hearsay evidence under Fed. R. Ev. 802, which may not be considered on summary judgment. See Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999) (citing Wiley v. United States, 20 F.3d 222, 226 (6th Cir.1994)).

Even if the Court were to consider Plaintiff's notes, they do not reflect that Plaintiff

_____

[4]Plaintiff does not identify the author of the "Wilson notes."

has any personal knowledge as to why the male employees were late on the listed dates,

whether they discussed the circumstances with a supervisor, and whether their tardiness

was excused for any reason.  In addition, Plaintiff testified at her deposition that she has no

personal knowledge as to whether Gray or Alcalde were disciplined for coming to work

late.  See Plaintiff's depo., pp. 138-140, 198, 202.  Carnevale's affidavit which Plaintiff

has submitted indicates that Gray was in fact disciplined since Carnevale states that the

records produced by Defendant as disciplinary records for Gray show that the discipline

applied to him was not always progressive and he received either coaching or verbal

warnings when he was disciplined for being late.  See Carnevale Aff., ¶ 9.  Finally,

Plaintiff's cryptic notes do not show that Gray committed infractions under the policy that

warranted more serious discipline than he actually received as her notes reflect only that

Gray was 20 minutes late on June 5, 2004.  See doc. 22, exh. F.  This evidence does not

suffice to show that Plaintiff was treated less favorably than male employees for

infractions of comparable seriousness.

Looking at the individual incidents giving rise to disciplinary action against

Plaintiff cumulatively and viewing her disciplinary record as a whole, a reasonable trier of

fact could not conclude that she was treated more harshly than a similarly-situated male

employee with a comparable disciplinary record.  Plaintiff has not produced competent

evidence that a male employee committed a series of infractions warranting progressive

discipline culminating in termination.  Accordingly, Plaintiff has failed to carry her burden

to produce evidence to establish a prima facie case of discrimination.

Even if Plaintiff had come forward with sufficient evidence to establish a prima facie case of gender discrimination, she has not produced sufficient evidence to create a genuine issue of material fact regarding pretext. Plaintiff claims that the reasons offered for Defendant's decisions are pretextual because Defendant has offered inconsistent explanations for its decisions. Plaintiff contends that Defendant was aware of disparate treatment of female employees and of harassment of Plaintiff upon her return from leave but did nothing about it and did not keep a record of such complaints. See Hakes depo., pp. 70-72, 74; Roberts depo., pp. 44-48; Diaz depo., pp. 167-168; Bodington depo., p 19. Plaintiff claims that Hake's review of discipline was therefore limited to the written record of managers who had discretion to decide whether or not to enforce the rules, such as Roberts' claimed discretion to approve late arrival for some employees but not others. Plaintiff concludes that because a jury could find Defendant's reasons for terminating Plaintiff's employment to be false or insufficient to justify termination, or that the alleged investigation pending termination was so ridden with error that Defendant could not honestly have relied upon it, she has established a genuine issue of material fact regarding pretext.

First, for the reasons stated above, Plaintiff has not produced competent evidence to show that the reasons offered for her termination were insufficient to motivate her termination. Second, Plaintiff has not shown that any of the other reasons offered by

20

Defendant for disciplining her are factually false. With regard to the dirty cart incident,

Plaintiff claims that she reported the cart in question was not hers because she did not have

bottled juices on her cart that day, and although Roberts later claimed that Plaintiff was the

only person on coffee break during that time, there were multiple coffee breaks that day.

See doc. 22, exh. 7; Plaintiff depo., p. 174. Plaintiff states in her affidavit, however, that

she could not honestly say if she had broken her cart down and that everyone else had

been using her cart, so she could not tell whether or not the dirty cart was actually hers.

Doc. 22, exh. 7.  Roberts testified at her deposition that she determined that the cart was

Plaintiff's because she had been the only coffee break person scheduled on the preceding

night.  Roberts depo., pp. 65-66.  Accordingly, the record demonstrates that Defendant had

a reasonable basis for concluding the cart in question was Plaintiff's, and if it in fact was

not, Plaintiff has not shown Defendant's conclusion to the contrary to be anything other

than an honest mistake.  Plaintiff has not demonstrated that any of the other reasons

offered by Defendant for disciplining her are factually false.

In addition, Plaintiff has not shown how Defendant's reasons for the decision to

terminate her are inconsistent.  Nor has Plaintiff shown that Defendant was aware of

Plaintiff's complaints of disparate treatment of female employees and harassment of

Plaintiff but failed to address the inequities.  There is evidence that Plaintiff complained

about unfair treatment and about particular incidents involving Larry Gray and others in

the department, but there is no evidence that she framed her complaints in terms of gender

21

discrimination and disparate treatment of male and female employees.  See Hakes depo., pp. 71-72; Plaintiff's depo., pp. 167-169;  Roberts depo., pp. 44-49.  Thus, Defendant's alleged failure to respond to Plaintiff's complaints of unfair treatment is not competent evidence of pretext for gender discrimination.

Finally, Plaintiff has not produced evidence to show that Defendant's investigation pending her termination was so ridden with error that Defendant could not honestly have relied upon it.  Plaintiff argues that Hakes' review of the discipline Plaintiff had received was limited to the written record presented by managers who had discretion whether or not to enforce the rules.  Plaintiff alleges by way of example that Roberts now justifies her failure to discipline the males appropriately by claiming unfettered discretion to approve late arrival for some employees but not others.  See doc. 22, p.22 (citing Roberts Decl., ¶ 4).  Plaintiff also asserts that Roberts "admits that she approved different arrival times for other employees," thereby enabling her to excuse the late male employees "as she pleased" while instead choosing to discipline Plaintiff for similar conduct.  Plaintiff's allegations are a misrepresentation of the record.  Roberts indicated in her declaration only that she could "approve[ ] a subordinate's arrival at a time later than that marked on the schedule" and that she did not consult with Diaz when she did so.  This statement by Roberts and the fact that she had discretion to approve later arrival times for employees simply is not probative of pretext.  Plaintiff has produced no other evidence of errors occurring in the course of Defendant's investigation into her disciplinary record.  Having failed to produce

competent evidence of pretext, Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

B.  Pregnancy Discrimination Act claim

A claim of discrimination based on pregnancy under Title VII is analyzed in the same manner as any other claim of discrimination based on sex.  Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000).  This evidentiary framework requires that the plaintiff first establish a prima facie case of unlawful discrimination or introduce direct evidence of discrimination.  Manzer, 29 F.3d at 1081.

A prima facie case of pregnancy discrimination is established when the plaintiff demonstrates "1) she was pregnant, 2) she was qualified for her job, 3) she was subjected to an adverse employment decision, and 4) there is a nexus between her pregnancy and the adverse employment decision."  Cline, 206 F.3d at 658.

In support of her pregnancy discrimination claim, Plaintiff alleges that she was the only employee who became pregnant while reporting to Roberts; after Plaintiff returned from maternity leave, Roberts spoke negatively about Plaintiff to other employees; although Roberts admittedly did not notice a difference in Plaintiff upon her return to work, Plaintiff was subjected to unfair progressive discipline leading to the termination of her employment following her return to work; and Plaintiff had been disciplined only approximately once per year prior to her pregnancy.

Defendant is entitled to summary judgment on Plaintiff's pregnancy discrimination

23

claim.  Plaintiff does not allege that Defendant subjected her to unfair discipline or otherwise discriminated against her during her pregnancy, which ended when she gave birth in the latter part of December of 2003.  Rather, Plaintiff alleges that Defendant first subjected her to unfair discipline several months following her pregnancy, after she had returned from post-partum FMLA leave and additional time off for eye surgery, and then terminated her approximately nine months after she gave birth.  Plaintiff has not cited any authority for the proposition that a pregnancy discrimination claim may lie when the adverse employment action occurs many months after the pregnancy has ended and the plaintiff has returned from maternity leave.  Nor is the Court  aware of any such authority. Even if Plaintiff could establish a pregnancy discrimination claim when the adverse employment action occurs remote in time from the pregnancy, she cannot prevail on her claim in this case because she has not produced any evidence to demonstrate a causal connection between her pregnancy, any discipline she received, and her termination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's pregnancy discrimination claim.

C.  FMLA retaliation claim

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  An employer is prohibited from retaliating or discriminating against an employee who has exercised the right to take FMLA authorized leave.  Id.; 29 C.F.R. § 825.220(c).

In FMLA cases that rely upon indirect evidence, the Sixth Circuit has applied that three-step McDonnell Douglas paradigm.  See Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001).  A plaintiff may establish a prima facie case of retaliatory discharge under the FMLA, 29 U.S.C. § 2615(a)(2), by showing that (1) she availed herself of a protected right under the FMLA, (2) she was subjected to an adverse employment action, and (3) there is a causal connection between her exercise of a right under the FMLA and the adverse employment decision. Id. at 314 (citing Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir.1990)).  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Id. at 315.  If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is a pretext for discrimination.  Id.  In order to establish a causal link, the plaintiff must "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the

adverse action.'" Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th

Cir.1990) (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982)).  The

Sixth Circuit has stated in the context of a claim of retaliation for filing an EEOC charge

that although temporal proximity alone is insufficient to establish a causal connection, a

causal connection may be established by demonstrating both that the adverse action was

taken shortly after the plaintiff filed the complaint and that the plaintiff was treated

differently from other employees.  Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 321

(6th Cir. 2007) (citing Moore v. KUKA Welding Sys., 171 F.3d 1073, 1080 (6th Cir.

1999)).

In support of her FMLA claim, Plaintiff alleges that prior to taking leave, she

"reported her concerns that she would be subjected to retaliation if she told her supervisor

about her pregnancy;" her FMLA leave fell at the busiest time of the year and Defendant

had to fill her position with part-time workers; Plaintiff's manager spoke negatively about

her following her return; Plaintiff had been subjected to discipline approximately once a

year prior to her leave but was subjected to unfair progressive discipline leading to her

termination soon after her return; notes written by the Human Resources Director Hakes

recount Plaintiff's entire history of discipline with "one glaring non-discipline entry -

Plaintiff's FMLA leave"; and other non-pregnant workers were not subjected to unfair

discipline and were not terminated.

Upon a careful review of the evidence of record, the Court finds that Plaintiff has failed to come forward with sufficient evidence to go forward on her FMLA claim.  For the reasons set forth above, Plaintiff has not shown that the discipline to which she was subjected was unwarranted or that other similarly-situated employees committed infractions of comparable seriousness and were not terminated.  The other evidence cited by Plaintiff is not probative of a retaliatory motive, particularly when considered in view of the fact that the separate disciplinary actions leading up to Plaintiff's termination were handed out to Plaintiff by at least three different supervisors, only one of whom is alleged to have harbored any animus toward Plaintiff.  Moreover, contrary to Plaintiff's representation, there is no notation of FMLA leave on the chronology of discipline compiled by Hakes.  Instead, there is an entry of "LOA," which presumably is an abbreviation for "Leave of Absence," next to the dates "Nov. 30, 2003 - Apr. 5, 2004," which would encompass the period of Plaintiff's FMLA leave and her additional time off for eye surgery.  Doc. 22, exh. K.  The inclusion of this notation in the chronological listing of Plaintiff's disciplinary actions does not support an inference that Defendant terminated Plaintiff in October 2004 in retaliation for taking FMLA leave ending in February 2004.

D.  Breach of Ohio public policy

Defendant contends that Plaintiff cannot bring a claim for breach of Ohio public policy based on her discharge because she was not an at-will employee but was instead a

union member whose employment was covered by a collective bargaining agreement. Plaintiff has not responded to Defendant's argument in her opposing memorandum. Accordingly, Defendant is entitled to summary judgment on the public policy claim.

E.  Title VII retaliation

Defendant argues that Plaintiff's Title VII retaliation claim fails as a matter of law. Plaintiff did not present a claim for retaliation in violation of Title VII in the complaint. Accordingly, the Court need not address Defendant's argument.

V.  Conclusion

The record does not support a reasonable inference that Defendant discriminated against Plaintiff because of her sex or pregnancy or that Defendant retaliated against Plaintiff for exercising her rights under the FMLA.  Accordingly, Defendant's motion for summary judgment is well-taken and is **GRANTED** as to all claims.  Plaintiff's claims are **DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.**

IT IS SO ORDERED.


Date: March 9, 2007                          s/Sandra S. Beckwith
                                             Sandra S. Beckwith, Chief Judge
                                             United States District Court